**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiffs, FLSA Collective*
*Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JESSICA GUZMAN and JOCELYNNE MORA,
*on behalf of themselves, FLSA Collective Plaintiffs,*
*and the Class*,

        Plaintiffs,

             v.

26 MOTORS CORP.
      d/b/a 26 MOTORS
26 MOTORS QUEENS INC.
      d/b/a 26 MOTORS
26 MOTORS JAMAICA INC.
      d/b/a 26 MOTORS
26 MOTORS LONG ISLAND LLC
      d/b/a 26 MOTORS
26 MOTORS OF FRANKLIN SQUARE LLC
      d/b/a 26 MOTORS
MOSHE POURAD,
YOSEF AYZENCOT, and
AHARON BENHAMO

        Defendants.

---

Case No.: 23-cv-00283

**FIRST AMENDED CLASS
AND COLLECTIVE
ACTION COMPLAINT**

**Jury Trial Demanded**

        Plaintiffs  JESSICA GUZMAN and JOCELYNNE MORA ("Plaintiffs"), on behalf of

themselves and others similarly situated, by and through their undersigned attorneys, hereby

file this First Amended Class and Collective Action Complaint against Defendants, 26

MOTORS CORP. d/b/a 26 MOTORS, 26 MOTORS QUEENS INC. d/b/a 26 MOTORS, 26 MOTORS JAMAICA INC. d/b/a 26 MOTORS, 26 MOTORS LONG ISLAND LLC d/b/a 26 MOTORS, 26 MOTORS OF FRANKLIN SQUARE LLC d/b/a 26 MOTORS ("Corporate Defendants"), MOSHE POURAD, YOSEF AYZENCOT, and AHARON BENHAMO ("Individual Defendants," and together with Corporate Defendant, "Defendants") and state as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that their are entitled to recover from Defendants: (1) unpaid overtime wages, (2) liquidated damages and (3) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid wages, including overtime wages; (2) statutory penalties, (3) liquidated damages and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiff JESSICA GUZMAN is a resident of Bronx County, New York.

6.      Plaintiff JOCELYNNE MORA is a resident of Bronx County, New York.

7.      Defendants own and operate a chain of pre-owned 5-star car dealerships in New York City under the trade name "26 Motors" at the following locations, including four separate car lots associated with Defendants' Bronx store:

(a)  4015 Boston Road, Bronx. NY 10466 (26 Motors Bronx);

(b)  3981 Boston Road, Bronx. NY 10466 (26 Motors Bronx 2);

(c)  4055 Boston Road, Bronx. NY 10466 (26 Motors Bronx 3);

(d)  4077 Boston Road, Bronx. NY 10466 (26 Motors Bronx 4);

(e)  181-07 Jamaica Avenue, Hollis, NY, 11423 ("26 Motors Jamaica");

(f)  72-30 Queens Blvd., Woodside NY, 11377 ("26 Motors Queens);

(g)  1305 Hempstead Turnpike, Elmont, NY 11003 ("26 Motors Long Island");

(h)  707 Hempstead Turnpike, Franklin Square, NY, United States 11010 (26 Motors Franklin Square")

8.      Corporate Defendant 26 MOTORS CORP. d/b/a 26 MOTORS is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 4015 Boston Road, Bronx. NY 10466, and an address for service of process located at 3981 Boston Road, Bronx, NY, United States 10469.

9.      Corporate Defendant 26 MOTORS JAMAICA INC. d/b/a 26 MOTORS is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 181-07 Jamaica Avenue, Hollis, NY, United States 11423.

10.     Corporate Defendant 26 MOTORS QUEENS INC. d/b/a 26 MOTORS is a domestic business corporation organized under the laws of the State of New York, with a

3

principal place of business at 72-30 Queens Blvd., Woodside NY, 11377, and an address for service of process located at 72-12 Queens Blvd., Woodside, NY, United States 11377.

11.     Corporate Defendant 26 MOTORS LONG ISLAND LLC d/b/a 26 MOTORS is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business at 1305 Hempstead Turnpike, Elmont, NY 11003, and an address for service of process located at 707 Hempstead Turnpike, Franklin Square, NY, United States 11010.

12.     Corporate Defendant 26 MOTORS FRANKLIN SQUARE LLC d/b/a 26 MOTORS is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 707 Hempstead Turnpike, Franklin Square, NY, United States 11010.

13.     Individual Defendant MOSHE POURAD is a founder and co-owner of Corporate Defendants. MOSHE POURAD exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. MOSHE POURAD had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times, employees of each of the three Businesses could complain to MOSHE POURAD directly regarding any of the terms of their employment, and MOSHE POURAD would have the authority to effect any changes to the quality and terms of employees' employment. MOSHE POURAD directly reprimanded any employee who did not perform his duties correctly. MOSHE POURAD exercised functional control over the business and financial operations of the Corporate Defendant.

14.     Individual Defendant YOSEF AYZENCOT is a founder and co-owner of Corporate Defendants. YOSEF AYZENCOT exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. YOSEF AYZENCOT had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times, employees of each of the three Businesses could complain to YOSEF AYZENCOT directly regarding any of the terms of their employment, and YOSEF AYZENCOT would have the authority to effect any changes to the quality and terms of employees' employment. YOSEF AYZENCOT directly reprimanded any employee who did not perform his duties correctly. YOSEF AYZENCOT exercised functional control over the business and financial operations of the Corporate Defendant.

15.     Individual Defendant AHARON BENHAMO is a founder and co-owner of Corporate Defendants. AHARON BENHAMO exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. AHARON BENHAMO had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times, employees of each of the three Businesses could complain to AHARON BENHAMO directly regarding any of the terms of their employment, and AHARON BENHAMO would have the authority to effect any changes to the quality and terms of employees' employment. AHARON BENHAMO directly reprimanded any employee who did not perform his duties correctly.

AHARON BENHAMO exercised functional control over the business and financial operations of the Corporate Defendant.

16.     Individual Defendants were routinely involved in the workdays of Plaintiffs and other employees. The following representations from Defendants' website, announced as "Our Story," shows that Individual Defendants are not aloof investors in a distant corporate entity but entrepreneurs who have been personally involved in building 26 Motors from the ground up on the basis of a specific business philosophy:

> 26 Motors was founded in 2017 by Moshe, Yosef, and Aharon with a dream to change the way people buy cars and the car business itself. They started with only twenty-five cars in the lot and quickly grew as they worked to modernize the dealership business and change the car-buying experience.
>
> The trio teamed up with the idea to build a transparent business. In kabbalistic terms, the number 26 means "God's name"; therefore, the company's name means "God's Motors," and they believe that without the blessing of God, they are nothing.
>
> Working together as a team and overcoming many obstacles that come along the way, they started in a small car lot in the Eastchester area of The Bronx. Owning only twenty-five standard daily drivers, and later realizing how the community was interested in luxury cars, which no other dealership had in the area at the time. 26 Motors started being the prime dealership where people shopped for luxury cars. From having exclusive inventory, building a great online presence, and helping those who needed a second chance to purchase a vehicle, 26 Motors began changing the dealership business. Offering exclusive red carpet treatment with confetti galore making everyone feel special.
>
> Fast-forward to 2022, 26 Motors is the largest independent pre-owned dealership in the tri-state area. Now owning multiple stores throughout New York, with four lots in The Bronx, two in Queens, one in Jamaica, two on Long Island, and more to come. With over 800 cars in inventory for their customers to choose from.
>
> Motors is not just a car dealership, but it's a movement to give people the opportunity to own a vehicle regardless of their situation. Transparency and customer service are their most important company values. Making sure everyone drives off the lot with a smile is one of the things that makes 26 Motors unique. As the Company's slogan quotes "We are not the same", we have

achieved success by bringing a different car buying experience and upscaling their work environment to a more relaxed atmosphere. 26 Motors is a family.[1]

17.     Attached hereto as **Exhibit A** is an article about Individual Defendant Moshe POURAD published in Authority Magazine on July 12, 2022, titled "Moshe Pourad of 26 Motors: Five Things I Learned As A Twenty-Something Founder."  The article states, "Moshe has since been the backbone of the business, helping expand the brand to multiple locations by working one-on-one with every department in the dealership." The article also quotes Individual Defendant POURAD as explaining:

> As an owner of your own business, you must wear many hats. When it comes to business management and leading 150 employees, you must be a manager, a psychologist, a therapist, and a motivational speaker. You have to do anything and everything to instill trust in your employees. You have to create a work environment that your employees are excited to be a part of.

18.     This clearly reveals that Individual Defendant POURAD is intimately involved in all aspects of 26 Motors' business, including employee relations. Indeed, Individual Defendant POURAD is quoted in a podcast as declaring, "The most important part is your employees, is to make sure they're taken care of and they're happy and they're making money."[2]

19.     Attached hereto as **Exhibit B** is a Linkedin article produced by 26 Motors titled "Be a leader, not a boss; Says Yosef Ayzencot of 26 Motors." The article states the following, proving that Individual Defendant AYZENCOT, too, is intimately involved in employee oversight:

> "A boss will tell you what to do, but a leader will show you how to do it," says Yosef when referring to how he handles being a leader at 26 Motors. Knowing every angle of the business and getting to know the staff is a big part of how 26 Motors operates, which brings a great balance of both an ethical and personable

---

[1] https://www.26motors.com/Dealer-Websites/26-Motors-Corp2-NY/aboutpage.aspx
[2] "The Secret of Dealing Cars with Moshe Pourad From 26 Motors," "Action and Ambition" Podcast, June 2022; https://open.spotify.com/episode/7okDm4Sx2FRwPqFzneF13K

work environment. Being hands-on with the staff has built a great leadership stigma and has helped their employees perform better at their jobs trusting their work.

------------

Co-founder of 26 Motors, Yosef Ayzencot, has made it clear that being a great leader comes with seeing yourself as an equal to the group. "I see myself as an equal, from the lot attendants to the managers, I don't think that I am better than anybody." This approach has led 26 Motors to have a loyal team of employees who are not afraid to go the extra mile because they believe in the brand and they can trust their managers.

20.     Attached hereto as **Exhibit C** is an article titled "How to Improve Talent Acquisition and Retention," published in *Training* magazine, an online human resources publication that is co-authored by Individual Defendants POURAD and AYZENCOT. They state in pertinent part:

> We implement methods to encourage employee participation and engagement. We hold semi-annual reviews to make sure people know how they're doing in their positions and incentivize loyalty with regular compensation boosts for good performance. New York is expensive, and we recognize the financial challenges of living in this city, so to alleviate that, we keep ourselves appraised of fair market compensations and provide sales incentive bonuses to further the success of our employees.

21.     The foregoing reveals that Individual Defendants are intimately involved not only with managing employees generally but also with compensation issues in particular.

22.     Plaintiffs encountered Individual Defendants on a daily or near-daily basis throughout Plaintiffs' employment. When Plaintiffs or other employees would complain directly to Individual Defendants about Defendants' failure to pay overtime, Individual Defendants would respond that they were considering the issue. But afterward, Individual Defendants would direct intermediate supervisors to tell employees that "it's company policy not to pay OT."

## DEFENDANTS CONSTITUTE A SINGLE INTEGRATED ENTERPRISE

23.     Corporate Defendants operate or operated their various 26 Motors stores as a single integrated enterprise, under the control of their owners, Individual Defendants MOSHE POURAD, YOSEF AYZENCOT, and AHARON BENHAMO. Individual Defendants MOSHE POURAD, YOSEF AYZENCOT, and AHARON BENHAMO own and operate each Corporate Defendant. Specifically, Corporate Defendants are engaged in related activities, share common ownership and have a common business purpose.

24.     All the businesses share the trade name and trademark "26 Motors."

25.     All the businesses are advertised on the website: https://www.26motors.com/, which contains links to individual "locations" or "stores." **Exhibit D**.

26.     Defendants' Self-Description is as follows:

### 26 Motors Corp - Luxury Car Dealership in NY

Welcome to 26 Motors Corp. We are a full service New York luxury car dealership located in Bronx serving the towns of Bronx County, Westchester NY, Queens NY, Long Island NY, New Jersey, Connecticut, Eastchester NY, Mt Vernon NY, Fort Lee NJ, Yonkers NY, Edgewater NJ, New Rochelle NY, Englewood NJ, Cliffside Park NJ, Palisades Park NJ, Tenafly NJ, Fairview NJ, Ridgefield NJ, Great Neck NY and Guttenberg NJ. We take pride in the quality leasing inventory that we carry that include Acura, Audi, BMW, Chevrolet, Dodge, Ford, GMC, Honda, Hyundai, Infiniti, Jeep, Kia, Land Rover, Lexus, Maserati, Mazda, Mercedes-Benz, MINI, Nissan, Porsche, Ram, Tesla, Toyota and Volkswagen. The cars, SUVs, minivans, trucks and pickups we carry are inspected and often may be eligible for the many extended service contracts & warranties we offer.

We are a certified pre-owned 5-star dealership whose primary focus is on luxury and exotic cars. We have the largest variety of luxury cars with a range of standard, to exotic cars; Honda to Lamborghini. No matter what your budget is, we have something for you. Our lot has a varied range of Japanese, American, and European cars. All customers are welcome. We have rapidly expanded our business in just 4 years, looking to be the premier dealership on Boston Road. We have 3 locations in the Bronx and two locations in Queens.

Our finance department has relations with most banks and lending institutions in NY and will help you get a car loan at affordable payments. We provide sub-prime financing too and in most cases your credit history may not be a problem as you might think! At 26 Motors Corp, we believe you can get financed with good, bad or no credit history at all.

https://www.26motors.com/

27.     The foregoing demonstrates that Defendants understand themselves as a single business, headquartered in the Bronx, that through its various stores also services other parts of the tri-state area.

28.     The above references a single finance department, which one would not expect for genuinely separate businesses. The financial centralization is confirmed by the fact that the stores all employ the very same car loan application. *See* **Exhibit E**.

29.     This integration is further confirmed by Individual Defendant POURAD's plans to expand "our business" to twenty-six locations, conveyed in the article attached as **Exhibit A**:

We are looking to grow our business and locations and, soon, 26 Motors is expanding outside of New York, opening a dealership in Miami, Florida. It's exhilarating but also a big challenge.

We are looking forward to the expansion, but it's an entirely new area and market in which we have not invested. But it is an opportunity to learn how to do business in different cities and states and helps us prepare for expansion into other markets like Atlanta and California. The goal is to grow 26 Motors into 26 stores.

30.     Individual Defendant POURAD does not state that his goal is to open a total of twenty-six different used car dealerships; rather he aims "to grow 26 Motors into 26 stores," again confirming Corporate Defendants' integration with each other.

31.     Defendants are fully integrated with respect to employee relations, as Defendants regularly transfer employees between locations. Plaintiffs worked at the Bronx location but Plaintiff GUZMAN was offered an opportunity to transfer to the Queens location.

10

Plaintiff GUZMAN could regularly observe managers transferring from the Bronx location to other locations.

32.     Plaintiff GUZMAN regularly spoke with three co-workers at the Bronx location—Jocelyn [LNU], Destiny [LNU], and Brianna [LNU]—who would later to be transferred to the Queens locations, after which she learned from them that the pay practices detailed below had been instated in the Queens location as well. Three of the salespeople she knew at the Bronx location—Jay [LNU], Tim [LNU], and Rafael [LNU]—also worked at other locations.

33.     This integration is corroborated by **Exhibit F**, a job announcement on the website of the Long Island store that directs applicants to email addresses where they can send applications for sales representative work at the Queens and Bronx stores. Truly separate businesses do not direct applicants to send their resumes to other businesses.

34.     Attached hereto as **Exhibit G** is a review of Defendants' workplace by a former employee on Glassdoor.com.  The employee states: "Call the store in and ask for an interview. You will head to the Bronx location and meet with a General manager after he will interview and then they'll hire you within 2 interviews." This confirms that that Defendants are a single business with multiple locations and a headquarters at the Bronx locations. Irrespective of which store applicants seek to work at, they will be interviewed by a general manager at Defendants' headquarters.

35.     Attached hereto as **Exhibit H** is the review page for Defendants on Indeed.com. The page contains two reviews, both by employees complaining about Defendants' unlawful failure to pay all wages due, including overtime, as is consistent with Plaintiffs' allegations,

detailed below. One of the reviewers states that he or she worked at both the Bronx and Queens locations, again confirming that Defendants are a single integrated enterprise.

36.     Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

37.     At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members was directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

38.     Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including, but not limited to, mechanics, receptionists, sales representatives, business development center representatives, customer service representatives, and janitors) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

39.     At all relevant times, Plaintiffs and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their lawful overtime wages. The claims of Plaintiffs stated herein are essentially the same as those of FLSA Collective Plaintiffs.

40.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this

action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS – NEW YORK**

41.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including, but not limited to, mechanics, receptionists, sales representatives, business development center representatives, customer service representatives, and janitors) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

42.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

43.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number being presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. Individual Defendant POURAD has stated that Defendants employ 150 employees. *See* **Exhibit A**.

44.     Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay overtime premiums and overtime wages, (ii) failing to provide proper wage statements per requirements of the New York Labor Law, and (iii) failing to provide proper wage and hour notices, at date of hiring, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

45.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

46.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of

individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants.  The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

47.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint enjoy a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

48.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a)    Whether Defendants employed Plaintiffs and Class members within the meaning of NYLL;

(b)    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

(c)    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and Class members for their work;

(d)    Whether Defendants properly notified Plaintiffs and Class members of their regular hourly rate and overtime rate;

(e)    Whether Defendants paid Plaintiffs and Class members the proper overtime compensation under the New York Labor Law;

(f)    Whether Defendants paid Plaintiffs and Class members the proper wages for all hours worked under the New York Labor Law;

(g)    Whether Defendants improperly paid Plaintiffs and Class members on a fixed salary basis;

(h)    Whether there was an agreement between the Defendants and Plaintiffs and Class members that the fixed salary would cover all hours worked, including those in excess of forty (40);

(i)    Whether Defendants provided proper wage statements to Plaintiffs and Class members per requirements of the New York Labor Law; and

**(j)**    Whether Defendants provided proper wage and hour notices to Plaintiffs and Class members, at date of hiring and annually, per requirements of the New York Labor Law.


## STATEMENT OF FACTS

### *Plaintiff GUZMAN*

49.    In or about January 2022, Defendants hired Plaintiff GUZMAN to work as a Business Development Center Representative at their Bronx location. Her responsibilities

included various secretarial tasks as well as providing customer service. In July 2022, Defendants terminated a manager along with other employees who were perceived to have a close relationship with that manager, which included Plaintiff GUZMAN. Sometime in August 2022, Defendants realized that they needed Plaintiff GUZMAN's services and called her, pleading with her to return to her former job. Plaintiff GUZMAN agreed to do so until she went on maternity leave in December 2022. She did not return to Defendants' employment.

50.     Throughout her employment, Plaintiff GUZMAN was scheduled to work, and did work, from 9:00 a.m. to 7:00 p.m. from Sundays to Fridays, for a total of 60 hours each week.

51.     From the start of her employment until June 4, 2022, Plaintiff GUZMAN was compensated at a straight time rate of sixteen ($16) dollars per hour for all hours worked, including for overtime hours in excess of forty (40).  Thus, Defendants unlawfully failed to pay Plaintiff GUZMAN at one-and-a-half times her regular rate for hours worked over forty.

52.     Not only did Defendants fail to pay Plaintiff GUZMAN overtime premiums for her overtime hours, they also failed to pay her *anything at all* for two (2) of the hours she worked each week. Approximately four (4) times per week, Plaintiff GUZMAN was unable to take a free and clear meal break because she was too busy with work, and so she had to eat intermittently for a few minutes here and there as she was working. Defendants observed that this was happening and did not object, but they would still deduct these thirty (30) minutes from Plaintiff GUZMAN's total pay.

53.     From her conversations with, and observations of, other employees, Plaintiff GUZMAN is aware that her co-workers also were not paid overtime premiums and were also required to work through their meal breaks, despite not being paid for them.

54.     Defendants had already been paying a fixed salary to some of their non-managerial employees.  After June 4, 2022, Defendants announced that all employees would now be paid a fixed weekly salary, rather than hourly.  Plaintiff GUZMAN was told that her weekly salary would be $650. Defendants did not discuss with either Plaintiff GUZMAN or with other employees how many weekly working hours this was intended to cover.

55.     Given that there was no such discussion, the $650 covered only the first forty (40) hours that Plaintiff GUZMAN worked each week, meaning that her hourly wage was almost exactly what it had been prior to the new policy, around $16. However, the new policy meant that Plaintiff GUZMAN would now receive *no compensation at all* for hours worked beyond forty, not even at a straight time rate, as had been the case previously. She was deprived not only of overtime premiums but of any wages whatsoever for overtime work.

56.     Through her observations and conversations, Plaintiff GUZMAN learned that other employees of Defendants were treated in exactly the same way, paid fixed weekly salaries that were never intended to cover overtime and were never supplemented to cover it.

### *Plaintiff MORA*

57.     Plaintiff MORA was employed by Defendants at their Bronx location between February 2020 and January 12, 2023.

58.     Up until September 2021, Plaintiff MORA worked as a Business Development Center Representative at their Bronx location. Her responsibilities included various secretarial tasks as well as providing customer service.

59.     During this period, Plaintiff MORA was scheduled to work, and did work, six days a week, Sunday through Friday, from 9:00 am to 6:00 pm, for a total of fifty-four (54) per week. She was paid at a flat rate of $650 per week.

60.     However, Defendants never stated to Plaintiff MORA (or any other employee) that the $650 fixed weekly salary was intended to cover overtime hours, and Plaintiff MORA worked a substantial number of overtime hours each week. Since the $650 covered only Plaintiff MORA's first forty (40) hours of work each week, Defendants are liable to Plaintiff MORA for fourteen hours of overtime wages for each week she worked during this period. Their failure to do so violated both the FLSA and NYLL.

61.     In September of 2021, Plaintiff MORA was promoted to a manager position and her weekly salary was raised to $1000.  She now worked five days a week—Monday, Tuesday, Thursday, Friday, and Sunday—from 9:00 am to 8:00 pm, for a total of fifty-five (55) hours per week.

62.     However, there was still no understanding that this was intended to cover overtime hours, and Defendants did not compensate Plaintiff MORA with additional wages beyond $1000. While Plaintiff MORA's title was "manager," she did not qualify as exempt from overtime requirements under NYLL because the minimum salary for such was $1125 in New York City during the relevant period. Accordingly, Defendants are liable to Plaintiff MORA for fifteen (15) hours of overtime wages for each week she worked between becoming a manager and the end of her employment.

63.     Through her observations and conversations, Plaintiff MORA learned that other employees of Defendants were treated in exactly the same way, paid fixed weekly salaries that were never intended to cover overtime and were never supplemented to cover it.

***WTPA Allegations***

64.     Defendants failed to provide Plaintiffs and Class members with wage notices at the outset of their employment with the information required by law.

65.     Defendants also failed to provide Plaintiffs and Class members with the wage statements required by law. Employees of Defendants were paid with hand-filled checks accompanied by invoice slips. Other than wages paid that week, these slips contained none of the information that the NYLL provides must be on wage statements.

66.     In failing to provide proper wage statements and notices to Plaintiffs and Class members, as required under the Wage Theft Protection Act ("WTPA"), Defendants have generated a concrete harm to an interest identified by the New York State legislature. Defendants' failure to provide these documents frustrates New York's objective of, and Plaintiffs' interest in, ensuring that employees receive all wages owed. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting the WTPA's wage notice and wage statement provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380.

67.     Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

68.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiffs and Class members.  Defendants' conduct actually harmed Plaintiffs and Class members by weakening their ability to contest the sufficiency of Defendants' wage payments to them.

69.     Plaintiffs have alleged that they were not properly paid for overtime work. But because Defendants failed to provide proper wage statements stating Plaintiffs' hours worked, they have no easy way to definitively prove what their hours were.

70.     Had the wage statements accurately represented Plaintiffs' actual hours, as required under law, these documents would have revealed a clear, unambiguous, and indisputable discrepancy between the number of hours that Plaintiffs (and other employees) worked—and hence the wages to which they were entitled—and the hours for which Plaintiffs were actually paid. Thus, proper wage statements would have provided clear proof of Defendants' FLSA and NYLL violations, by showing that Plaintiffs had, in fact, worked overtime.

71.     Likewise, Plaintiffs have alleged that there was never any understanding between themselves (and other employees) and Defendants that Plaintiffs' fixed salaries were supposed to compensate overtime work in addition to their forty hours of straight time pay. Proper wage notices that clearly stated what the fixed salary was supposed to compensate (only 40 hours) would have provided Plaintiffs and other employees with additional proof of Defendants' wage violations.

72.     The proof provided by proper wage notices and wage statements would have permitted Plaintiffs and other similarly wronged employees to readily prevail on a motion for summary judgment early in the litigation, without the need to conduct much discovery, since accurate wage statements would have effectively constituted a written admission by Defendants of their wrongdoing.

73.     This legal leverage alone might well have incentivized Defendants to make Plaintiffs and other undercompensated employees whole—in order to avert what would be a hopelessly uphill litigation fight.

74.     Regardless of what Defendants would have done had Plaintiffs enjoyed such leverage, Plaintiffs have described what is a certainty of a harm, not a mere risk, because it is certain that incontrovertible documentary evidence of Defendants' wage violations would have placed Defendants in a far weaker legal position and Plaintiffs in a far stronger one. Plaintiffs have been concretely injured because Defendants' WTPA violations have prevented this outcome.

75.     Of course, Defendants WTPA violations could not prevent Plaintiffs from bringing the instant action. But there is a substantial difference between prosecuting a lawsuit based on contestable testimony and doing so based on incontestable documentary evidence provided by the defendant itself, which is what Defendants' WTPA violations deprived Plaintiffs of.

76.     There is no question that Plaintiffs would be in a far better position than they are now had they received compliant wage statements and notices. At worst, Plaintiffs would have the means to readily prevail on a summary judgment motion, simply on the basis of documentary evidence generated by Defendants themselves. At best, Plaintiffs might have avoided litigation altogether, since the threat thereof might have incentivized Defendants to just make Plaintiffs whole.

77.     Because either of the foregoing outcomes would have been preferable to the status quo, Plaintiffs and Class members were concretely harmed when Defendants failed to provide them with the documentation that would have facilitated one of the preferred outcomes.

The loss of an opportunity to readily prevail on a summary judgment motion with fairly little expenditure of resources is a concrete injury.

### *General Allegations*

78.     Defendants knowingly and willfully operated their business with a policy of failing to pay proper overtime wages to Plaintiffs, FLSA Collective Plaintiffs, and Class members, in violation of the FLSA and NYLL.

79.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by the NYLL.

80.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices, as required under NYLL.

81.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs in this litigation and have agreed to pay the firm a reasonable fee for its services.

### STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

82.     Plaintiffs reallege and reaver the foregoing paragraphs of this First Amended Class and Collective action Complaint as if fully set forth herein.

83.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

84.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

85.     At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

86.     At all relevant times, Defendants had a willful policy and practice of failing to pay proper overtime compensation at the statutory rate of time and one-half to Plaintiffs and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek.

87.     Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

88.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

89.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages.

90.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this complaint to set forth the precise amount due.

91.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

92.     Plaintiffs reallege and reaver the foregoing paragraphs of this First Amended Class and Collective Action Complaint as if fully set forth herein.

93.     At all relevant times, Plaintiffs and Class members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

94.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

95.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

96.     Defendants knowingly and willfully failed to provide proper wage and hour notices, at the date of hiring, to Plaintiffs and Class members, as required by New York Labor Law § 195(1).

97.     Defendants knowingly and willfully failed to provide proper wage statements to Plaintiffs and Class members with every wage payment, as required by New York Labor Law § 195(3).

98.     Due to Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants their unpaid overtime premiums, unpaid overtime compensation due to a fixed salary, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to New York Labor Law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA the NYLL;

b.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.      An award of unpaid overtime premiums and overtime wages due under the FLSA and NYLL;

d.      An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

e.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages, including overtime compensation, pursuant to the FLSA;

f.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages, including overtime compensation, pursuant to the NYLL;

g.      An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

h.      Designation of Plaintiffs as Representative of the FLSA Collective Plaintiffs;

i.      Designation of this action as a class action pursuant to F.R.C.P. 23;

j.      Designation of Plaintiffs as Representatives of the Class; and

k.      Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:    May 10, 2023

Respectfully submitted,

By:    */s/ C.K. Lee*           
       C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10016
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*